**COYLE LAW GROUP LLP**
55 Madison Avenue, Suite 400
Morristown, NJ 07960
(973) 370-0592
jcoyle@coylelawgroup.com
John D. Coyle 029632001
Jesse C. Morris 038262007
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IMEELYN BACOSA, LAYTESSE CANTY-BLACKWELL, LISA PALMISANO, and LISA RIVERA,<br><br>                Plaintiffs,<br><br>v.<br><br>BRISTOL MYERS SQUIBB,<br><br>                Defendant. | Civil Action No. 2:22-cv-5839<br><br><br>**CIVIL ACTION**<br><br>**COMPLAINT WITH JURY DEMAND** |

1.     This action seeks redress for the willful, wanton, and intentional violation of the civil rights of employees who have dedicated their lives to the wellbeing of others through their work at Bristol Myers Squibb.

2.     Throughout the COVID-19 pandemic, Plaintiffs Imeelyn Bacosa, Laytesse Canty-Blackwell, Lisa Palmisano and Lisa Rivera (formerly known as LisaDeCandia), employed by Defendant Bristol Myers Squibb ("BMS"), placed their vocations above all else.

3.     From support staff to engineers, Plaintiffs represent the broadest cross-section of BMS employees possible, but they all have one thing in common: their dedication to BMS's success so that it can continue to improve the lives of millions with their pharmaceuticals.

4.     Despite years of service, the administration, and attorneys for BMS turned their back on these loyal employees, suspending, and firing them in a knowing and willful violation of controlling state and federal law.

5.      This action is the result of institutional discrimination against personnel with certain deeply held religious beliefs and punishing them for attempting to defend these beliefs. It seeks injunctive relief for Plaintiffs and all others similarly situated under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49. ("NJLAD") and Title VII of the Civil Rights Act, 42 U.S.C. §2000e-2, *et seq*. ("TITLE VII").

6.      This matter is <u>not</u> about whether vaccines 'work.' This case is <u>not</u> about whether private companies, like Defendant BMS can impose vaccine mandates; they can.

7.      This case is concerned with the fact that any private or government vaccine mandate must still comply with state and federal law regarding exemptions.

8.      As the United States Equal Employment Opportunity Commission ("EEOC") made clear[1]:

> Note: Court decisions upholding or rejecting federal vaccination requirements do not affect any statements made in this publication regarding employer and employee rights and responsibilities under the equal employment opportunity laws with respect to employers that require COVID-19 vaccinations.

9.      That is the heart of this matter: Defendant BMS's willful and systematic violation of employer responsibilities and employee rights with respect to its COVID-19 vaccine requirement.

10.     Defendant imposed a condition of employment that required Plaintiffs to forego sincerely held religious beliefs in violation of the NJLAD and TITLE VII.

11.     Specifically, when Plaintiffs submitted requests for exemption from the mandatory COVID-19 policy, BMS rejected their assertion of beliefs and discriminated against Plaintiffs and fired them.

---

[1] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

12.     As discussed in greater detail below, the NJLAD and TITLE VII required BMS to engage in a *bona fide* interactive process to determine if Plaintiff could perform the essential functions of their jobs with an accommodation.

13.     Defendant BMS also violated controlling law by refusing to accommodate <u>any</u> of Plaintiffs, pretextually invoking the Equal Employment phrases "undue burden," and "unsafe workplace."

14.     Engineers - could not be accommodated. Material handlers - could not be accommodated. Program specialists - could not be accommodated. People who worked remotely during the pandemic, suddenly could not be accommodated.

15.     BMS refused to conduct this good faith investigation in flagrant disregard for the NJLAD and TITLE VII.

16.     BMS has taken the following illegal and flagrantly discriminatory positions:

      a.     First, it refused to accommodate Plaintiffs; and

      b.     Second, it refused to engage in an interactive process with Plaintiffs to determine if there was an accommodation acceptable to both parties.

17.     However, unvaccinated personnel in hundreds of facilities have been safely performing the essential functions of their job without being vaccinated with the accommodations of masking and routine testing - which is the exact same accommodation New Jersey Governor Murphy in his Executive Order 283 <u>put in place for healthcare workers with direct patient contact in hospitals</u>:

> The policies adopted by covered settings pursuant to this Order must provide appropriate accommodations, to the extent required by federal and/or state law, for employees who request and receive an exemption from vaccination because of a disability, medical condition, or sincerely held religious belief, practice, or observance. The policies adopted by covered settings pursuant to this Order must require covered workers that receive an exemption pursuant to this paragraph to continue weekly or twice weekly testing as required by Executive Order No. 252 (2021).

18.     While that Executive Order requires healthcare workers to be vaccinated and requires their employers to comply with discrimination laws and accommodations, there was no similar mandate imposed on private employers like BMS.

19.     This action arises because BMS has elected to violate the NJLAD and TITLE VII with respect to the enforcement of the vaccine mandate.

20.     The COVID-19 pandemic has placed great strains on all of us. Most people across this great nation and state stood together, but not the administration of BMS. BMS instead used COVID-19 as a pretext to violate its most basic legal obligations to Plaintiff.

21.     This Complaint seeks to hold BMS accountable for its flagrant religious discrimination, refusal to accommodate, and retaliation.

## PARTIES AND JURISDICTION

22.     Defendant is a global biopharmaceutical company with six (6) of their twenty-seven (27) campuses located in New Jersey, specifically in Union, Mercer, and Middlesex Counties. The addresses for these facilities are: 86 Morris Avenue, Summit, New Jersey 07901, 556 Morris Avenue, Summit, New Jersey 07901, Squibb Dr, New Brunswick, New Jersey 08901; 100 Nassau Park Blvd #300, Princeton, New Jersey 08540; 3401 Princeton Pike, Lawrence Township, New Jersey 08648; and 3551 Lawrenceville Rd, Lawrence Township, New Jersey 08648.

23.     Plaintiff Imeelyn Bacosa, was a Risk Evaluation and Mitigation Strategies Specialist at BMS from 2019 until she was terminated, is a resident of the town of Rockaway in Morris County, New Jersey. On July 18, 2022, the EEOC issued a Notice of Right to Sue in the matter *Imeelyn Bacosa v. Bristol Myers Squibb,* Charge No. 17E-2022-00216. A copy of which is attached hereto as Exhibit A.

24.     Plaintiff Laytesse Canty-Blackwell, was a Material Handler with BMS from December 2019 until her termination, is a resident of Bloomsbury, New Jersey in Hunterdon County. On July 18, 2022, the EEOC issued a Notice of Right to Sue in the matter *Laytesse Canty-Blackwell v. Bristol Myers Squibb,* Charge No. 17E-2022-00219. A copy of which is attached hereto as Exhibit B.

25.     Claimant Lisa Palmisano was a Senior Specialist of Global QMS programs at BMS from February 2016 until her termination, is a resident of the township of Wall in Monmouth County, New Jersey. On July 18, 2022, the EEOC issued a Notice of Right to Sue in the matter *Lisa Palmisano v. Bristol Myers Squibb,* Charge No. 17E-2022-00140. A copy of which is attached hereto as Exhibit C.

26.     Counsel for BMS has represented that Ms. Palmisano signed an agreement to arbitrate her employment-related disputes, including this one, in binding arbitration.  However, counsel for BMS has been unable to provide a copy of this supposed arbitration agreement and represented that BMS does not have a copy of the document.  Ms. Palmisano has reviewed arbitration agreements that other employees have signed (not Plaintiffs here) and does not recall signing same and does not have a copy.

27.     Plaintiff Lisa Rivera (formerly DeCandia), a former Senior Manager, Documentation at BMS for seven (7) years until her termination, is a resident of the town of Belleville in Essex County, New Jersey. On July 18, 2022, the EEOC issued a Notice of Right to Sue in the matter *Lisa DeCandia v. Bristol Myers Squibb,* Charge No. 17E-2022-00174. A copy of which is attached hereto as Exhibit D.

28.     As set forth herein, this Complaint brings claims under Title VII of the Civil Rights Act.

29.     Therefore, pursuant to 28 U.S.C. §1331, this Court has original subject matter jurisdiction over this matter.

30.     Defendant is a resident of northern Middlesex County, properly venued in the District Court seated in Newark.

## FACTUAL HISTORY

### The COVID-19 Policy & Rejection

31.     Like nearly all companies, BMS transitioned to virtual work for all but the most essential on-site employees at the on-set of the pandemic. It remained primarily virtual for over a year.

32.     In mid-August 2021, BMS sent a company-wide request that employees submit their Vaccine Declaration, which indicated if they had already received the vaccine, planned to receive it, or were requesting an exemption. Other emails from BMS leadership informed their coworkers that the Pfizer-BioNTech vaccine had been approved by the FDA and encouraged them to receive it.

33.     By September 2021, BMS informed employees that they needed to be fully vaccinated against COVID-19 by November 1, 2021. To be fully vaccinated, a BMS employee must have received either two (2) doses of the Moderna or Pfizer-BioNTech vaccines or one (1) dose of the Johnson & Johnson Janssen vaccine. This was part of an effort to transition back to in-person work as much as possible by October 11, 2021.

34.     In an eighty-one (81)-page company-wide communication dated September 17, 2021, BMS laid out its procedures and plan for returning to in-person work. This included requiring all employees (regardless of vaccination status) to mask on BMS premises and undergo regular testing for COVID-19.

35.     This communication noted that, at the time of publication, eighty-seven percent (87%) of BMS employees in the U.S. and Puerto Rico were vaccinated against COVID-19 and BMS hoped to get that rate as close to one hundred percent (100%) as possible.

36.     Even fully remote employees would be required to be fully vaccinated by November 1, 2021.

37.     Employees who were not vaccinated and had not received an accommodation by the November 1, 2021, deadline would "be subject to disciplinary action up to and including termination for cause." Medical and religious accommodation requests would be handled on a case-by-case basis.

38.     Employees seeking an exemption were required to submit an accommodation request by October 1, 2021. BMS would then reach out to individual employees to discuss their request and assess whether they could provide accommodation without an "undue burden" on themselves.

**Plaintiff Imeelyn Bacosa**

39.     Plaintiff Bacosa has a sincerely-held religious objection to receiving the COVID-19 vaccine.

40.     On October 1, 2021, Plaintiff Imeelyn Bacosa submitted the BMS Religious Accommodation Request Form and an additional letter outlining her religious beliefs, stating that requiring her to receive the COVID-19 vaccine would violate her sincerely held religious beliefs.

41.     Ms. Bacosa started working as a contractor with Celgene Corporation in April 2010 and was hired permanently in December of the same year. Ms. Bacosa was employed as a Registration Representative in U.S. REMS, Customer Care Department, wherein she enrolled, updated, and maintained prescribers' and patients' data into the Risk Management Program. Due to good quality of work and great ethics, she was then promoted as Verification Specialist, a quality assurance job

7

ensuring and checking that all information were accurately entered in the system by Registration Representatives.

42.     Ms. Bacosa was a subject matter expert of her team, making her a mentor by her colleagues in the department. Ms. Bacosa's career record was exceptional as she consistently received an outstanding annual review from her supervisors. Before Celgene was acquired by Bristol Myers Squibb in November 2019, Ms. Bacosa's title was a REMS Specialist. Ms. Bacosa undergone cross-trainings to gain more knowledge and was able to do cross functional roles within the department.

43.     Even before COVID-19 pandemic, Customer Care Center was equipped to work remotely. The department was trained to function uninterrupted in times of disasters or calamities. Ms. Bacosa was provided the equipment she needed at home which was the same set-up as in her workplace (on-site). Ms. Bacosa was scheduled to work from home three (3) times a week and if working overtime during pre-Covid. The department and its employees were even recognized by the company for uninterrupted work during hurricane Sandy in 2012.

44.     Ms. Bacosa was one of those employees who dedicated her time at work that time and was able to gladly serve their patients and customers. Ms. Bacosa always stepped up to help her colleagues especially the new hires to better understand the processes and procedures of the Risk Management Program. Ms. Bacosa established great friendships with her coworkers during her entire eleven (11) years in the company. Ms. Bacosa is married to Luisito Bacosa for almost sixteen (16) years, and they have three (3) beautiful children: Elisha (15 years old), Ianna (13 years old) and David (8 years old), who are all the pride and joy of the family. Both Ms. Bacosa's parents also lived with them.

45.    Ms. Bacosa tirelessly took care of her parents until her mother passed away on December 11, 2021, a week after she was wrongfully terminated by BMS.

46.    During the start of COVID-19 where everything was unknown and everyone was in lock-down, Ms. Bacosa and her husband initiated to print face shields and donated them to the healthcare and frontline workers. The face shields were donated to Rockaway Township municipality and some hospitals in Delaware, New York, and New Jersey.

47.    Ms. Bacosa has a heart for the kids, God called her to serve as a teacher at church since she became a born-again Christian. Currently, Ms. Bacosa is a member of Christ Church in Rockaway and dedicating her time to volunteer at Quest Kids as a Sunday School teacher for pre-school children.

48.    On October 7, 2021, Ms. Bacosa received a similar questionnaire as part of BMS's "interactive process." She replied with short answers on October 13, 2021.

49.    On November 3, 2021, Ms. Pezzina denied Ms. Bacosa's request, stating:

> BMS has carefully reviewed all information you provided as part of your accommodation request and based on your submission and responses to BMS's questions, it is BMS's position that you have not demonstrated that you are qualified for a religious accommodation because you have not set forth a sincerely held religious belief, observance, or practice within the meaning of applicable law that would prevent you from receiving a COVID-19 vaccination.

> Among other reasons, you did not provide sufficient information that would entitle you to a religious accommodation. BMS questions whether your objection is religious or based on secular concerns as your submission primarily argues that you have a healthy immune system and you should not be required to take a vaccine. The submission also replies on inaccurate information because the vaccines do not damage the immune system. Your request was reliant on an online source with fillable fields that you downloaded from a website.

> You state that aspects of your religion, Christianity, prevent you from receiving the vaccine. We note that most Christian leaders

have encouraged their followers to receive the vaccine. There is also no widely held religion we are aware of which contains as a tenet of their religious belief that followers should not get a COVID-19 vaccine.

BMS recognizes that each individual can make a personal decision on whether to get the COVID-19 vaccine, including decisions based on their conscience and personal assessment of the value or necessity of the vaccine and/or the risks and safety profile of the vaccine. However, this does not warrant a religious exemption.

Additionally, even if you had demonstrated a sincerely held religious belief, BMS cannot provide an accommodation that creates an undue hardship. One of the ways that a request can pose an undue hardship is when the proposed accommodation poses a health risk to the individual or others. We have carefully reviewed applicable health and safety guidance from leading health authorities and conferred with medical experts on our ability to grant the accommodation you are requesting and concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or risking the health and safety of co-workers and all others with whom you interact in person while working. In addition to creating a substantial health and safety risk, exempting you from the vaccination requirement will impose an undue hardship in the form of unreasonable expense and/or operational hardship on BMS.

50.   On December 6, 2021, Defendant BMS terminated Ms. Bacosa.

**Plaintiff Laytesse Canty-Blackwell**

51.   Plaintiff Canty-Blackwell has a sincerely-held religious objection to receiving the COVID-19 vaccine.

52.   On October 1, 2021, Plaintiff Laytesse Canty-Blackwell submitted the BMS Religious Accommodation Request Form, clearly stating that requiring her to receive the COVID-19 vaccine would violate her sincerely held religious beliefs. Ms. Canty-Blackwell, formerly worked as a Material Handler at BMS. In Ms. Canty-Blackwell's eyes, at the beginning of her employment at BMS was the best career choice she had made for her and her family as she was certainly counting on being employed for many years to come.

53.    Ms. Canty-Blackwell has a family of five (5) which includes herself, her husband (been together for fourteen (14) years and married for nine (9) years), her three (3) children: Darian (age 13), Zamir (age 9) and Aniyah (age 5). Ms. Canty-Blackwell consistently went to work on time every day with a positive attitude and ready to work mentality.

54.    Ms. Canty-Blackwell performed all assigned tasks accurately, efficiently, and satisfactorily in accordance with company's expectations and procedures. Ms. Canty-Blackwell actively participated in every aspect of the team environment. When management needed employees to work overtime, fulfill alternative shifts, even holidays and weekends to continuously support their 24/7 Car T operation during critical times of the pandemic, Ms. Canty-Blackwell was one of the few team members to offer her availability while most expressed no interest whatsoever.

55.    At the time, the company did not even bother to negotiate any differential pay, no pay increase, or incentives for the sacrifices she endured to support their objectives. Ms. Canty-Blackwell took on the job anyway, hoping it would reveal to management of her dedication, loyalty, and ultimately her compassion.

56.    Around October 2021, Ms. Canty-Blackwell received BMS's follow-up questionnaire and responded to their inquiries.

57.    On November 18, 2021, Caitlin Freeland, Executive Director of Human Resources at BMS, denied Ms. Canty-Blackwell's request, stating:

> BMS has carefully reviewed all information you provided as part of your accommodation request. As you described in your request for an accommodation, you explained that, among other things, that you cannot take the vaccine because "[your] body is a temple."
>
> Based on that review, BMS has determined that you are not eligible for an accommodation that would prevent you from receiving a COVID-19 vaccination.
>
> Additionally, BMS cannot provide a reasonable accommodation that creates an undue hardship. One of the ways that a request can

pose an undue hardship is when the proposed accommodation poses a health or safety risk to the individual or others. We have carefully reviewed applicable health and safety guidance from leading health authorities and conferred with medical experts on our ability to grant reasonable accommodations to unvaccinated individuals. With respect to your specific request, we have concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or creating a health and safety risk in the workplace. In addition, exempting you from the vaccination requirement will impose an undue hardship in the form of unreasonable expense and/or operational hardship on BMS.

We hope that you will decide to come into compliance with the BMS policy but will fully respect your final decision. Please note that to remain employed by BMS, you must be fully vaccinated against COVID-19, as per BMS policy. If you are unable to provide sufficient proof of at least one shot by November 29, 2021, you will be separated from the Company effective January 31, 2021. If you are able to provide proof of one shot by November 29th, with the intent to be fully vaccinated, you will not be separated on January 31st. Instead, you will continue to work remotely until two weeks past your last shot, at which point you can return to the site/field. You are welcome to continue to work until your termination date, unless otherwise notified by BMS. Additional information relating to your separation will be provided to you prior to your separation date.

58.     On February 14, 2022, Defendant terminated Ms. Canty-Blackwell.

**Plaintiff Lisa Palmisano**

59.     Plaintiff Palmisano has a sincerely-held religious objection to receiving the COVID-19 vaccine.

60.     On or about September 29, 2021, Plaintiff Lisa Palmisano submitted her request for a religious exemption and an additional letter outlining her beliefs, stating that requiring her to receive the COVID-19 vaccine would violate her sincerely held religious beliefs.

61.     Ms. Palmisano is a resident of Wall Township in Monmouth County, New Jersey. Ms. Palmisano joined the pharmaceutical industry in 2016 following the loss of multiple family members to cancer. Ms. Palmisano saw the difference and additional time that clinical trials gave

her family and became passionate about them, knowing the work was going to be important for future generations battling the same disease. Outside of work, Ms. Palmisano enjoys spending time with her husband, their families, and friends, going to the beach, riding bicycles, and having a nice conversation over a delicious meal.

62.     In or about October 2021, Ms. Palmisano received a questionnaire regarding her religious beliefs, which she filled out and submitted to BMS by October 27, 2021.

63.     On November 17, 2021, Ms. Freeland denied Ms. Palmisano's request, stating:

> BMS has carefully reviewed all information you provided as part of your accommodation request. As you described in your request for an accommodation, you explained that, among other things, "I have been made aware that three COVID-19 vaccines were either produced, tested or developed from fetal cell lines that were obtained from elective abortions" and, "It was not until the pandemic that I ever felt the need to do research on what I have injected into my body in the past. Looking back, I am disappointed that I did not do research before getting any vaccinations as an adult as many of them were developed from or tested with fetal cell lines from aborted babies."
>
> Based on that review, BMS has determined that you are not eligible for an accommodation that would prevent you from receiving a COVID-19 vaccination.
>
> Additionally, BMS cannot provide a reasonable accommodation that creates an undue hardship. One of the ways that a request can pose an undue hardship is when the proposed accommodation poses a health or safety risk to the individual or others. We have carefully reviewed applicable health and safety guidance from leading health authorities and conferred with medical experts on our ability to grant reasonable accommodations to unvaccinated individuals. With respect to your specific request, we have concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or creating a health and safety risk in the workplace. In addition, exempting you from the vaccination requirement will impose an undue hardship in the form of unreasonable expense and/or operational hardship on BMS.

64.     On December 6, 2021, Defendant terminated Ms. Palmisano

**Plaintiff Lisa Rivera**

65.     Plaintiff Rivera has a sincerely-held religious objection to receiving the COVID-19 vaccine.

66.     On or about September 8, 2021, Plaintiff Lisa Rivera (formerly DeCandia) submitted her request for a religious exemption from the COVID-19 vaccine. Ms. Rivera is a resident of the township of Belleville in Essex County, New Jersey. Ms. Rivera has over twenty-five (25) years of experience as a Quality professional within the Biotech/Pharmaceutical industries. Ms. Rivera's passion is serving patients to enhance quality of life. Ms. Rivera's contributions as a quality professional help companies improve their products' reliability, durability, and performance so that consumers have the confidence in the safety and effectiveness of medicines.  Outside of work, Ms. Rivera loves spending time with her husband, three (3) children, and fur baby.

67.     In response to her request, Plaintiff Rivera was provided with BMS religious exemption form on September 8, 2021 by Sangita Land, Sr. Director, Global Employee & Workforce Relations.

68.     On or about September 23, 2021, Plaintiff Rivera submitted her paperwork to support her request for a religious exemption.

69.     On November 4, 2021, Plaintiff Rivera received a list of follow-up questions from BMS regarding her beliefs, which she responded to by the deadline of November 8, 2021.

70.     On November 8, 2021, Ms. Rivera submitted the Religious Exemption Attestation for COVID-19 Vaccine from BMS, in which BMS requested even more information about Ms. Rivera's religious beliefs. BMS even requested Ms. Rivera's consent to obtain her medical records, which she denied.

71.     On November 15, 2021, Ms. Freeland responded:

BMS has carefully reviewed all information you provided as part of your accommodation request. As you described in your request for an accommodation, you explained that, among other things, you cannot be vaccinated because "vaccines contain cells, cellular debris, protein, and DNA from aborted babies," and because "there are serious health risks involved with vaccinations." Additionally, you note that "intentionally exposing the immunocompromised and other to the live viral shedding that accompanies vaccines or subjecting [yourself] or [your] family to a risk of chronic disease and even death violates the command to love your neighbor as yourself."

Based on that review, BMS has determined that you are not eligible for an accommodation that would prevent you from receiving a COVID-19 vaccination.

Additionally, BMS cannot provide a reasonable accommodation that creates an undue hardship. One of the ways that a request can pose an undue hardship is when the proposed accommodation poses a health or safety risk to the individual or others. We have carefully reviewed applicable health and safety guidance from leading health authorities and conferred with medical experts on our ability to grant reasonable accommodations to unvaccinated individuals. With respect to your specific request, we have concluded that there is no accommodation available that would enable you to continue to perform the essential functions of your job without imposing undue hardship or creating a health and safety risk in the workplace. In addition, exempting you from the vaccination requirement will impose an undue hardship in the form of unreasonable expense and/or operational hardship on BMS.

We hope that you will decide to come into compliance with the BMS policy but will fully respect your final decision. Please note that to remain employed by BMS, you must be fully vaccinated against COVID-19, as per BMS policy. If you are unable to provide sufficient proof of at least one shot by November 29, 2021, you will be separated from the Company effective December 6, 2021. If you are able to provide proof of one shot by November 29th, with the intent to be fully vaccinated, you will not be separated on December 6th. Instead, you will continue to work remotely until two weeks past your last shot, at which point you can return to the site/field. You are welcome to continue to work until your termination date, unless otherwise notified by BMS. Additional information relating to your separation will be provided to you prior to your separation date.

72.   On December 6, 2021, Defendant terminated Ms. Rivera.

15

**Refusal to Accommodate**

73.     In accordance with the above, the NJLAD and TITLE VII required BMS to engage in an individual interactive process to determine if an accommodation could be made for Plaintiffs' religious beliefs.

74.     BMS never truly engaged with Plaintiffs in the interactive process.

75.     The numerous questionnaires sent to employees seeking religious exemptions were clearly not in good faith, as indicated by the numerous "gotcha" questions and invasive requests such as access to employees' medical records.

## COUNT I:

## VIOLATION OF NJLAD: RELIGIOUS DISCRIMINATION

76.     Plaintiffs repeat and reallege the allegations contained in the prior sections as if fully set forth herein.

77.     The NJLAD prescribed requirements that Defendant BMS was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

78.     The NJLAD prohibits an employer, such as Defendant BMS, from retaliating against an employee who asserts their protected rights under the NJLAD.

79.     The NJLAD protects the rights of persons with sincerely held religious beliefs.

80.     Defendant BMS wrongfully denied requests for religious exemption as supposedly not meeting the standard for exemption, in violation of the NJLAD.

81.     The NJLAD prohibits BMS from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

82.     Upon receipt of the requests for religious exemption from all Plaintiffs, BMS terminated Plaintiffs as employees.

83.     By terminating Plaintiffs' employment, BMS retaliated against them in violation of the NJLAD.

84.     As a result, Plaintiffs were damaged.

**WHEREFORE:** Plaintiffs demand entry of a judgment awarding:

    a.     Compensatory damages;

    b.     Punitive damages;

    c.     Attorneys' fees and costs of suit; and

    d.     Such other relief as the Court may deem proper and just.

<u>**COUNT II:**</u>

<u>**VIOLATION OF NJLAD: FAILURE TO ACCOMMODATE**</u>

85.     Plaintiffs repeat and reallege the allegations contained in the prior sections as if fully set forth herein.

86.     The NJLAD provides that BMS <u>must</u> provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

87.     The NJLAD requires BMS to make a *bona fide* effort to reach an accommodation for employees who seek exemption.

88.     BMS did not make a *bona fide* effort to reach an accommodation for Plaintiffs.

89.     The NJLAD provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of their position.

90.     The NJLAD provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or

otherwise allowing you to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

91.     Plaintiffs were able to perform the essential functions of their jobs without an undue hardship to BMS.

92.     Plaintiffs were able to perform the essential functions of their jobs without putting the public at risk.

93.     By refusing to provide accommodations, BMS violated the NJLAD.

94.     As a result, Plaintiffs were damaged.

**WHEREFORE:** Plaintiffs demand entry of a judgment awarding:

      a.     Compensatory damages;

      b.     Punitive damages;

      c.     Attorneys' fees and costs of suit; and

      d.     Such other relief as the Court may deem proper and just.

### COUNT III:

### VIOLATION OF TITLE VII: FAILURE TO ACCOMMODATE

95.     Plaintiffs repeat and reallege the allegations contained in the prior sections as if fully set forth herein.

96.     TITLE VII provides that BMS <u>must</u> provide an employee with a reasonable accommodation from their mandatory vaccine policy that would enable them to do their job, unless doing so would impose an undue burden on their operations.

97.     TITLE VII requires BMS to make a *bona fide* effort to reach an accommodation for employees who seek exemption.

98.     BMS did not make a *bona fide* effort to reach an accommodation for Plaintiffs.

99.     TITLE VII provides that an accommodation will be considered to constitute an undue hardship if it would result in the inability of an employee to perform the essential functions of their position.

100.    TITLE VII provides that reasonable accommodations for exemptions from the COVID-19 vaccine could include requiring the employee to undergo regular testing for COVID-19, or otherwise allowing you to work in a manner that would reduce or eliminate the risk of harm to other employees or to the public. A reasonable accommodation may also include providing you with personal protective equipment that sufficiently mitigates your risk of COVID-19 transmission and exposure.

101.    Plaintiffs were able to perform the essential functions of their job without an undue hardship to BMS.

102.    Plaintiffs were able to perform the essential functions of her job without putting the public at risk.

103.    By refusing to provide accommodations, BMS violated TITLE VII.

104.    As a result, Plaintiffs were damaged.

**WHEREFORE:** Plaintiffs demand entry of a judgment awarding:

    a.      Compensatory damages;

    b.      Punitive damages;

    c.      Attorneys' fees and costs of suit; and

    d.      Such other relief as the Court may deem proper and just.

**COUNT IV:**

**VIOLATION OF TITLE VII: RELIGIOUS DISCRIMINATION**

105.    Plaintiffs repeat and reallege the allegations contained in the prior sections as if fully set forth herein.

106.    TITLE VII prescribed requirements that BMS was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

107.    TITLE VII prohibits an employer, such as BMS, from retaliating against an employee who asserts their protected rights under TITLE VII.

108.    TITLE VII protects the rights of persons with sincerely held religious beliefs.

109.    TITLE VII prohibits BMS from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

110.    Upon receipt of the requests for religious exemption from Plaintiffs, BMS terminated Plaintiffs as employees.

111.    By terminating Plaintiffs' employment, BMS retaliated against them in violation of the TITLE VII.

112.    As a result, Plaintiffs were damaged.

**WHEREFORE:** Plaintiffs demand entry of a judgment awarding:

a.      Compensatory damages;

b.      Punitive damages;

c.      Attorneys' fees and costs of suit; and

d.      Such other relief as the Court may deem proper and just.

**COUNT V:**

**DECLARATORY JUDGMENT**

113.   Plaintiffs repeat and reallege the allegations contained in the prior sections as if fully set forth herein.

114.   NJLAD and TITLE VII provided for injunctive relief to prevent future violations.

115.   Plaintiffs are legally entitled to a declaratory judgment that BMS violated the NJLAD and TITLE VII and that an injunction should issue requiring BMS to comply with the NJLAD and TITLE VII regarding religious exemptions and accommodations.

**WHEREFORE:** Plaintiffs demand entry of a judgment awarding:

      a.      Injunctive relief as set forth herein;

      b.      Attorneys' fees and costs of suit; and

      c.      Such other relief as the Court may deem proper and just.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury of all issues so triable.

**Dated: October 3, 2022**                  **Attorneys for Plaintiffs**

                                    By:_____*s/ John D. Coyle*

                                     **COYLE LAW GROUP LLP**
                                     John D. Coyle, Esq. (0296362001)
                                     55 Madison Avenue, Suite 400
                                     Morristown, NJ 07960
                                     Tel. (973) 370-0592
                                     jcoyle@coylelawgroup.com